**Ann Marie CARSTENS, Appellant,**

v.

**Richard James CARSTENS, Appellee.**

No. S–5039.

Supreme Court of Alaska.

Feb. 11, 1994.

---

Walter W. Mason, Jamin, Ebell, Bolger & Gentry, Seattle, for appellant.

Steve Cole, Gray, McLean, Cole & Razo, Kodiak, for appellee.

Before: MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

### OPINION

MATTHEWS, Justice.

Ann Carstens contests the judgment determining child custody and support, property division, and attorney's fees in the divorce action brought by her former husband, Richard Carstens.

Richard and Ann Carstens were married twenty-three years. For the last eighteen years of the marriage the couple lived in Kodiak with their three children, Michael, Daniel, and Elizabeth. Only custody of Elizabeth is at issue in this case as the two sons are over eighteen and independent.

Over Labor Day weekend of 1990, Ann left Kodiak with Elizabeth and went to Sioux City, Iowa, to live with her brother's family.

At the time of trial, Ann had just bought a small house and was working as recreation director at a nursing home in Sioux City.

Richard filed for divorce in September of 1990, and Ann was awarded interim custody of Elizabeth. The issues of custody and property distribution were deferred, and the parties were granted a divorce in April 1991. The issues of property division and child custody were tried in the fall of 1991. In February 1992, the trial court granted Richard primary custody of Elizabeth, divided the marital property equally, required Ann to pay Richard $200 month in child support, and decreed that each party pay his or her own costs and attorney's fees. Ann appeals.

## I. CHILD CUSTODY AND SUPPORT[1]

■ The main dispute in this case centers on the custody of Elizabeth. Ann advances three arguments concerning the trial court's award of custody and child support to Richard: (1) the trial court did not properly consider evidence of Richard's physical and emotional abuse of Ann in determining custody; (2) the trial court abused its discretion by not allowing discovery of records pertaining to joint counseling previously sought by Ann and Richard; and (3) the trial court abused its discretion in the determination of child support under Rule 90.3. We address these issues in turn.

### A. Evidence of Abuse

■ Ann's primary argument on appeal is that the trial court refused to consider evidence of Richard's physical and emotional abuse of Ann as required by AS 25.24.-150(c)(7).[2] Furthermore, Ann contends that

---

1. In the area of child custody determinations the trial courts have "broad discretion." *Holl v. Holl,* 815 P.2d 379, 380 (Alaska 1991) (citing *Julsen v. Julsen,* 741 P.2d 642, 648 (Alaska 1987)). We will reverse the trial court's custody determination "only if we are convinced that the trial court has abused its broad discretion, or if controlling findings of fact are clearly erroneous." *Id.* Finally, we note that "[i]t is primarily the trial court's function to weigh the evidence for the purpose of making findings, and on appeal, deference must be given to the trial court's decision, particularly because of the trial court's

advantage in observing the witnesses." *Bonjour v. Bonjour,* 566 P.2d 667, 669 (Alaska 1977).

2. The statute provides, in part:
 (c) The court shall determine custody in accordance with the best interests of the child under AS 25.20.060—25.20.130. In determining the best interests of the child the court shall consider

 . . . . .

 (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents[.]

the court's refusal to consider Richard's abuse of Ann "tainted" its evaluation of other custody factors under AS 25.24.150.

Besides her own testimony, at trial Ann presented the testimony of her therapist in Iowa, Pat Breitenstein, and the guardian ad litem appointed in the case, Erica Kracker, to support her allegations of spousal abuse.[3] Besides his own testimony, Richard presented testimony of his counselor in Kodiak, Paul Ruff, that indicated Richard had adequately dealt with issues of anger and abuse. Richard also presented testimony that Ann disparaged Richard in the presence of Elizabeth.[4]

The court made extensive findings of fact on the issue of custody that discuss the required factors to be considered in AS 25.24.150. On the issue of abuse, the court found:

> While the parties presented evidence at trial that some physical and verbal abuse by each other occurred in the past, there is no showing that such conduct is effecting, has effected, or will effect [sic] significantly the emotional or physical well-being of Elizabeth. A child custody determination is to be made according to what is in the best interest of the child, and not as punishment to a parent for misconduct. Accordingly, this evidence is not of significant value in this custody determination.

Ann cites *Lowdermilk v. Lowdermilk*, 825 P.2d 874 (Alaska 1992) for the assertion that detailed findings are mandated when spousal abuse is in issue. Ann claims the court made no such detailed findings and therefore remand is required. Ann is in error on both points.

In *Lowdermilk*, we noted that "despite extensive evidence of spousal abuse in the record," the trial court "ignored the issue of spousal abuse" and "abused its discretion by

failing to make findings in regard to spousal abuse." *Id.* at 879. In this case, direct evidence of abuse was minimal. Even so, the trial judge made specific findings that there was no showing that the abuse affected or would affect Elizabeth. He thus fulfilled the requirements of AS 25.24.150(c)(7) and *Lowdermilk* by specifically considering evidence of spousal abuse and making factual findings on the issue as to the best interests of Elizabeth.

Ann's argument that the trial judge's refusal to consider Richard's abuse of Ann "tainted" his consideration of other custody factors rests on the faulty assumption that the judge did not consider the allegations of abuse. As noted above, the judge's findings of fact on the issue are well thought out. He properly focused on the primary question of which party could best meet Elizabeth's needs. Awarding custody of Elizabeth to Richard was not an abuse of discretion.

### B. *Discovery of Joint Counseling File*

█ Ann sought discovery under Alaska Rule of Civil Procedure 26(b)[5] of all the mental health records of Kodiak Island Mental Health Center that pertained to Richard. Two files were at issue: a file prepared by Paul Ruff, Richard's counselor after the parties' separation, and another therapist's file from 1984 pertaining to joint counseling sought by Ann and Richard. The trial court permitted discovery of the recent records, but not the records from 1984. The court did not deny access to these records on the basis that they were privileged, but because it determined them to be irrelevant.

In our view this determination amounted to an abuse of discretion. The mental health records presumably contained information concerning the parties' conduct toward each other and thus were relevant in the broad

---

3. Ann testified that Richard had hit her, elbowed her in the ribs, pulled her hair, and flung her against a wall. Pat Breitenstein, qualified in the area of abusive relationships, testified that Ann exhibited classic symptoms of an abused spouse. Finally, Erica Kracker reported and testified that she thought Richard had ongoing issues of anger control that concerned her.

4. Susan Thompson, a friend of the Carstens, and Helen Desinger, Ann's sister, both testified that

Ann verbally abused and denigrated Richard in Elizabeth's presence.

5. The rule provides, in part:

> (1) **In General.** Parties may obtain discovery regarding any matter, not privileged which is relevant to the subject matter involved in the pending action....

Alaska R.Civ.P. 26(b)(1).

sense of relevance for discovery purposes: "Alaska Civil Rule 26(b)(1) permits a party to discover all evidence, not privileged, that would be relevant at trial or that 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Doe v. Alaska Superior Court,* 721 P.2d 617, 620 (Alaska 1986). Mental health and joint counseling records of divorcing parties have commonly been held to be discoverable. *See, e.g., Bishop v. Goins,* 586 N.E.2d 905, 907 (Ind.Ct.App. 1992); *In Re Marriage of Kiister,* 245 Kan. 199, 777 P.2d 272, 275–76 (1989); *Perry v. Fiumano,* 61 A.D.2d 512, 403 N.Y.S.2d 382, 385–86 (N.Y.App.Div.1978).

Ann argues that the court's denial of access to the records was prejudicial error. Without any evidence in the record concerning the content of the files, there is no way for this court to determine prejudice. We therefore remand this issue to the trial court and direct that the files be opened for discovery. The trial court must determine whether the material in the files warrants a new trial. Procedurally, the case should be treated as though Ann had brought a motion to set aside a judgment for newly discovered evidence under Alaska Rule of Civil Procedure 60(b)(2), where due diligence was established. Ann must show that the evidence is such that it "would probably change the result on a new trial" and the evidence "must not be merely cumulative or impeaching." *Palmer v. Borg-Warner Corp.,* 838 P.2d 1243, 1247 (Alaska 1992) (quoting *Montgomery Ward v. Thomas,* 394 P.2d 774, 776 (Alaska 1964)).

### C. *Determination of Child Support*

■ In determining Ann's child support obligation, the trial court found:

Ann's income is below the poverty level, and payments of rehabilitative alimony will be used primarily for tuition and fees or job training expenses. Absent other circumstances, she would be obligated to pay child support of only $50 per month. Civil Rule 90.3(c)(1)(B). However, she will have a large sum of cash soon, and she will earn interest on that cash. Manifest injustice would result if Ann's amount of support were not increased. Civil Rule 90.3(c)(1). Her cash on hand is a product of the marriage and should be a source of funds to support a child of the marriage. Ann will have no other significant financial obligations, and her additional education or training expenses will be paid by the award of rehabilitative alimony. Ann shall pay child support for Elizabeth to Richard in the amount of $200 per month....

Ann argues that, in determining child support, the trial court abused its discretion in considering interest income that Ann might potentially earn.

The court's determination that Ann's obligation can be increased due to the interest income she will receive is difficult to support without more specific findings. The record does not indicate what amount the judge used in determining Ann's $200 support obligation, what amount of interest he assumed Ann would be earning, or what, if any, consideration he gave her earned income. We have required that the "actual numbers ... used to calculate the child support award" be set forth in findings supporting child support awards. *Terry v. Terry,* 851 P.2d 837, 838 (Alaska 1993) ("Findings are meaningless unless the calculations upon which they are based are disclosed."). The findings in this case fall short of this standard. We must therefore reverse the child support award and remand to the trial court to redetermine the award, "setting forth the actual numbers and calculations used to make the determination." *Id.*

■ Although not raised by either party, in order for the trial court to calculate properly an award on remand, we also address the trial court's determination that Ann's income is below the poverty level. Civil Rule 90.3(c)(1)(B) allows the trial court to vary the child support award that would be due under subsection (a) for "good cause." "Good cause" may include a "finding that the parent with the child support obligation has a gross income which is below the poverty level as set forth in the Federal Register." Civil Rule 90.3(c)(1)(B). If such a finding is made, then, as noted by the trial court, the statute permits reducing the parent's obligation to $50 per month.

The trial judge found that Ann's income was below the poverty level. He also found that Ann's take-home pay was approximately $700 per month. Her yearly income is thus about $8,400. The Federal Register lists the poverty level for Alaska and Hawaii as $8,500 per year. However the poverty level for the other 48 states is $6,810. (Fed.Reg., Feb. 14, 1992). Ann is below the poverty level in Alaska, but above the poverty level in Iowa, where she has worked and resided since 1990. Although there is no indication in the rules or commentary as to which poverty level should be applied, we find it logical to apply the level for Iowa. The poverty level is higher in Alaska due to the higher cost of living. Ann is not experiencing that higher cost of living, and thus should not receive the "benefit" of the higher poverty level. Using the Iowa poverty level, Ann no longer falls under the exception of (c)(1)(B) permitting $50 per month child support, but is required to pay support as determined by section (a).

## II. *EQUITABLE DIVISION OF THE MARITAL PROPERTY*[6]

This court has set out a three-step process for superior courts to follow in determining an equitable division of marital assets: "First, the trial court must determine what specific property is available for distribution. Second, the court must find the value of this property. Third, it must decide how an allocation can be made most equitably." *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983) (footnote omitted). At tri-

al the parties agreed as to the property available for distribution and its value. Ann argues on appeal that the trial court erred in determining the third factor, equitable distribution. She argues that the court erred in determining that a 50/50 division was equitable and contends that a division of at least 60/40 is required by the facts.[7]

Contrary to Ann's assertions, the trial court made extensive findings on the parties' relative economic status and the economic effects of the divorce. It was not an abuse of discretion for the court to determine that a 50/50 split in property was equitable. Ann received a cash buy-out of almost $80,000, in addition to $20,000 for rehabilitative alimony. While it is true that her earning capacity will probably not reach that of Richard, that is not necessarily dispositive. A lower earning capacity can justify an unequal property division in favor of the disadvantaged spouse, *Merrill v. Merrill*, 368 P.2d 546, 547–48 n. 4 (Alaska 1962), but it does not, as a matter of law, mandate one. Here, rehabilitative alimony was awarded and, as the trial court noted, the disparity in potential earnings was also balanced to a degree by the fact that Richard will have to incur substantial debt to pay Ann the cash buy-out. Ann cites this court to numerous cases in which we have upheld unequal property divisions. These decisions do not, however, establish that the trial judge abused his discretion in this case by awarding Ann an equal share of the property.[8] We affirm the trial court's property division.[9]

---

**6.** We review a trial court's equitable distribution of property "purely under the abuse of discretion standard and 'will not ... disturb [the division] unless it is clearly unjust.'" *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988) (quoting *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983)).

**7.** Ann argues that the court did not properly consider the factors set out in AS 25.24.160(a)(4) for determining property division: length of the marriage, the parties' station in life, age and health of the parties, earning capacities, financial conditions of the parties, conduct of the parties, and the circumstances and necessities of each party.

**8.** Ann also argues that the trial court erred by not awarding Ann an offset for Richard's rent-free use of the house and marital property and by not awarding post-separation child support. At

trial, Richard asked that the court make an adjustment for money he spent since the separation on maintenance of marital property, some of Ann's expenses, taxes, and property assessments. Ann asked for credits for rent she paid in Iowa, compensation for Richard's use of marital property, and back child support. The court disallowed both claims for offsets, noting that "to the extent the respective amounts are not equal, the benefits to the parties and their conduct eliminate any difference." The trial court's determination was not an abuse of discretion.

**9.** Both parties note that guns valued at $650 were not included in the trial court's disposition of property. The parties stipulated that, out of the six guns the parties owned, Richard would receive several valued at $650. The rest would be sold. It appears that the court mistakenly believed that the guns stipulated to go to Richard

### III. *ATTORNEY'S FEES* [10]

▇▇▇▇ Both parties incurred substantial attorney's fees. Richard's fees and costs totalled $33,405.56 and Ann's fees and costs totalled $48,658.82. The court determined that both sides should bear their own costs and fees, finding:

> With the cash that Richard will pay Ann for the property division and the rehabilitative alimony, Ann can afford to pay her own costs [and] attorney's fees. Ann's ability to pursue her claims in this action and to overcome the economic effects of the divorce have not been, and will not be, less than Richard's ability to do so if she pays her own legal expenses.

Ann argues that because her "economic situation and earning powers are but a fraction of Richard's, the trial court's failure to grant her attorney's fees can only be viewed as arbitrary, capricious, manifestly unreasonable, and stemming from an improper motive." She therefore requests that this court reverse and remand with instructions to enter an award of fees and costs to Ann in excess of fifty percent.

The facts in this case are similar to those in *Zimin v. Zimin*, 837 P.2d 118 (Alaska 1992). In *Zimin*, the wife argued that the trial court erred in denying her request for attorney's fees as her earning capacity was "significantly lower" than her husband's. *Id.* at 124. We noted, however, that earning capacity is not the only consideration in awarding attorney's fees. The trial court "must also consider the parties' relative economic situations as well as their earning capacity." *Id.* (citing *Rhodes v. Rhodes*, 754 P.2d 1333, 1336 (Alaska 1988)).

The trial court did consider Ann's relative financial situation after the divorce and found that she would be able to pay her attorney's fees and costs. In light of Ann's cash settlement and Richard's debt assumption to fulfill the terms of the settlement, it was not an abuse of discretion for the court to determine that it was equitable for the parties to pay their own costs and fees.

### IV. *CONCLUSION*

The trial court's order awarding custody of Elizabeth Carstens to Richard Carstens is REMANDED for a determination whether the joint counseling file warrants a new trial on the issue of custody. The trial court's determination of child support is REVERSED and REMANDED for recalculation under Rule 90.3, accompanied by findings which set forth the actual numbers and calculations used to determine the child support award.

The distribution of marital property [11] and the denial of attorney's fees are AFFIRMED.

COMPTON, Justice, dissenting in part.

In the past decade, courts and legislatures have come to realize that spousal abuse affects the interests of children in custody determinations. Accordingly, in 1989 the Alaska Legislature amended AS 25.20.090 and AS 25.24.150 to include any "history of violence between the parents" as a factor to be considered in custody determinations. Ch. 52, §§ 1–2, SLA 1989; *see Lowdermilk v. Lowdermilk*, 825 P.2d 874 (Alaska 1992) (failure to consider spousal abuse is abuse of discretion).

---

were the same set of guns the parties agreed to sell. In fact there were two separate sets of guns. Therefore the court made no reference to the $650 worth of guns. It did not charge $650 to Richard's share of the property, nor did it award Richard the guns. Upon remand for redetermination of child support, the trial court is instructed to distribute the guns and adjust the property settlement accordingly.

**10.** We note that in a divorce action, if the parties are in "comparable economic situations," each party should bear its own attorney's fees. *Hartland v. Hartland*, 777 P.2d 636, 644 (Alaska 1989). If the parties are not in comparable

situations, then the award of attorney's fees is within the discretion of the trial court, and "will not be disturbed on appeal unless it is 'arbitrary, capricious, manifestly unreasonable, or stems from an improper motive.'" *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1192 (Alaska 1987) (quoting *Brooks v. Brooks*, 733 P.2d 1044, 1058 (Alaska 1987)).

**11.** On remand for determination of child support, the trial court is to distribute the guns inadvertently left out of the property distribution and adjust the settlement accordingly.

I am persuaded that the trial court did not correctly address the issue of violence between Richard and Ann. The evidence shows: (1) Richard physically abused Ann; and (2) Ann made abusive and disparaging remarks about Richard in Elizabeth's presence.[1] From this the trial court concluded that "[w]hile the parties presented evidence at trial that some physical and verbal abuse by each other occurred in the past, there is no showing that such conduct is effecting, has effected, or will effect [sic] significantly the emotional or physical well-being of Elizabeth." In this court's words, the trial court "made specific findings that there was no showing that the abuse affected or would affect Elizabeth." Op. at 808.

The trial court did not consider that Ann's alleged "verbal abuse" toward and "denigration" of Richard might have been *in response to* Richard's physical abuse. There is support for the proposition that conduct provoking spousal abuse should be viewed as a mitigating factor in the court's consideration. *See Nale v. Nale,* 409 So.2d 1299, 1302 (La. Ct.App.1982) (mother's discharging shotgun at father in response to argument did not warrant award of custody of child to father); *Lovett v. Lovett,* 164 N.W.2d 793, 801 (Iowa 1969) (provocation is a defense to divorce based on verbal cruelty and abuse).

The trial court's approach to the issue of spousal abuse illustrates the problem with its judgment: the fruits of the physical abuse were used *against the victim* in the custody determination. Ann's alleged verbal abuse was used both to neutralize Richard's physical abuse, and to illustrate her alleged emotional problems, which the trial court concluded favored granting Richard custody of Elizabeth:

> Some of Ann's emotional issues are to be expected given her role during the marriage and the parties' relative emotional strengths and weaknesses, with Richard having the much stronger personality and motivation; however, *whatever their legitimacy and source,* Ann's emotional circum-

stances will prevent her from meeting Elizabeth's emotional needs as well as Richard can.

(Emphasis added).

We have held that it is an abuse of discretion to "fail[ ] to make findings in regard to spousal abuse ..., and its effect—if any—on [the wife's] apparently unacceptable mental state." *Lowdermilk,* 825 P.2d at 879. Richard should not be permitted to benefit from his physical abuse.

I would remand the custody issue to consider also whether Richard's physical abuse provoked Ann's verbal abuse, or contributed to Ann's apparently unacceptable "emotional circumstances."

---

1. There was no evidence presented that Ann physically abused Richard. Whether her verbal abuse toward and denigration of Richard in Elizabeth's presence is "domestic violence" or "violence between the parents" is debatable. However, for the purpose of this dissent I accept that such conduct constitutes spousal abuse.