**Earl J. BEARD, Appellant,**

v.

**Annette M. BEARD, Appellee.**

**No. S–7533.**

Supreme Court of Alaska.

Nov. 7, 1997.

---

Fleur L. Roberts, Law Offices of Fleur L. Roberts, Fairbanks, for Appellant.

Annette M. Beard, pro se, Fairbanks.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

We must decide whether, in awarding attorney's fees to Annette Beard in this divorce action, the superior court failed to give adequate consideration to the division of the parties' property, the attorney's fees each party expended, and Annette's litigation conduct. We affirm.

### II. FACTS AND PROCEEDINGS

Earl Beard and Annette Beard married in 1959. The superior court entered their divorce decree in 1995.

The court approved the parties' agreement to share legal and physical custody of their son, born in 1978. Earl's adjusted annual income, per his child support guidelines affidavit, was $73,478.59. Earl was required to pay child support of $1,200 per month while their son resides with Annette.[1] Child support will continue until the child reaches the age of nineteen so long as he is unmarried and pursuing his education.

In dividing their marital property, the court considered the parties' financial prospects, and found that "it is essential to provide Ms. Beard with the lion's share of the assets." The court found that Earl's earning capacity allows him to make $100,000 a year. Apart from Earl's pension, the court awarded to Annette assets valued at about $65,000, and awarded to Earl assets valued at about $11,000.[2]

The court also awarded Annette permanent spousal support, finding it unlikely she would ever obtain meaningful employment. Under this award, Annette receives $900 in spousal support monthly, increasing to as much as $2,000 when Earl's child support obligation ends.

After the parties sold the marital home, the court allowed Annette to withdraw $2,000 from the sale proceeds to pay attorney's fees. Annette moved for an additional attorney's fees award of $15,000. Annette then owed her attorney a balance of $20,270. Earl opposed the motion. The court ordered Annette's counsel to file detailed billing records to support her fees motion. After reviewing the records, Earl argued that the charges were excessive or the result of Annette's own elective or vexatious conduct.

Ruling on the attorney's fees motion, the superior court found:

> Ms. Beard engaged in conduct which greatly increased the fees in this case: she failed to respond to the complaint timely, she willfully violated repeated orders of the court to vacate the family residence so

---

1. Child support for one child is twenty percent of the noncustodial parent's adjusted annual income. Alaska R. Civ. P. 90.3(a)(2)(A). Absent a showing of good cause, this percentage does not apply to that part of the non-custodial parent's adjusted annual income that exceeds $72,000. Alaska R. Civ. P. 90.3(c)(2). The superior court calculated Earl's child support as if he had an adjusted annual income of $72,000.

2. Annette received numerous household and personal items; Earl's Alyeska savings and investment account accrued through March 1, 1995; sixty percent of Earl's pension plan; and approximately sixty percent of the net proceeds from the sale of the marital home. The court valued these assets at $65,001.12 (not including Earl's pension). Earl received some personal items; his truck; forty percent of his pension plan; approximately forty percent of the net proceeds from the sale of the marital home; and all of the marital debt. The court valued these assets at $11,187.30 (again not including Earl's pension).

it could be sold, and she litigated and relitigated almost every issue in the case.

The court explained that if it were not for the conduct that caused additional fees, it would grant Annette's request as made. "Due to the conduct which unreasonably made this case more expensive," the court decreased the additional fees award to $11,000.

The superior court denied Earl's motion to reconsider the award of attorney's fees. Earl appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

■ An award of attorney's fees in divorce actions is within the broad discretion of the trial court. *Wright v. Wright,* 904 P.2d 403, 410 n. 11 (Alaska 1995). On appeal, we will not disturb an attorney's fees award unless it appears that the trial court's determination was manifestly unreasonable. *Id.*

■ The trial court is to follow a two-step process when awarding attorney's fees based on vexatious conduct in a divorce action. *Wright,* 904 P.2d at 410–11 (citing *Kowalski v. Kowalski,* 806 P.2d 1368, 1372–73 (Alaska 1991)). The court must first determine what fee award would be appropriate based on the relative economic situations and earning powers of the parties. *Wright,* 904 P.2d at 410–11. Only then may it increase the award to account for the party's vexatious conduct. *Id.*

### B. *Whether the Superior Court Erred in Awarding Attorney's Fees to Annette*

#### 1. *The parties' relative economic situations and earning powers*

■ Alaska Statute 25.24.140(a) empowers the court in a divorce action to require one spouse to pay another spouse's attorney's fees and costs.[3] This court has repeatedly held that attorney's fees awards are to be

based primarily on the "relative economic situations and earning powers of the parties." *Kowalski,* 806 P.2d at 1372; *see, e.g., Burrell v. Burrell,* 537 P.2d 1, 7 (Alaska 1975). This standard ensures that "both spouses have the proper means to litigate the divorce action on a fairly equal plane." *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1192 (Alaska 1987).

Earl argues that the superior court did not consider the disparate division of the parties' net marital estate, the amount of attorney's fees each party expended, and the actual amount of attorney's fees. Earl also argues that the uneven property division made Annette's economic situation superior to Earl's despite her lower earning capacity.

Annette replies that her economic situation is not superior to Earl's because the assets she received were overvalued and because Earl has a superior earning capacity.

The superior court did not clearly err in finding that Earl's earning capacity is much greater than Annette's. The superior court found that "it is quite unlikely that Ms. Beard will ever obtain meaningful employment." The court also found that Earl's net annual income was roughly $76,240, and that his total earning capacity was $100,000. Accounting for expenses and support, the court calculated that Earl would have nearly $2,000 in disposable monthly income, while Annette would have none.

In *Burrell,* 537 P.2d at 7, we noted that "the parties' relative economic situations and earning powers are relevant factors to be weighed" in deciding whether to award attorney's fees in a divorce case. These are not necessarily the only relevant factors. In *Johnson v. Johnson,* 564 P.2d 71, 76–77 (Alaska 1977), the trial court denied a party's fees request after finding that the parties had expended an equal amount of fees, that they had expended an equal amount of time and effort, and that the property had been divided equally. *Id.* We noted that the ex-

3. AS 25.24.140 states in pertinent part:
(a) During the pendency of the action, a spouse may, upon application and in appropriate circumstances, be awarded expenses, including
(1) attorney fees and costs that reasonably approximate the actual fees and costs required

to prosecute or defend the action; in applying this paragraph, the court shall take appropriate steps to ensure that the award of attorney fees does not contribute to an unnecessary escalation in the litigation.

penditures and property division bear on the parties' relative economic standing, and that, in any event, these were reasonable factors for the trial court to consider. *Id.*

Review of these factors in the present case reveals no abuse of discretion. Annette received assets valued at about $65,000 plus sixty percent of Earl's pension, while Earl received assets valued at about $11,000 plus forty percent of his pension. (Earl's appellate briefs and excerpt of record do not, surprisingly, inform us of the total size of Earl's pension fund, but his pension apparently did not vest until 1995.) Nevertheless, even after the property division, Annette did not have a sound financial situation because she had no income other than Earl's support payments and she was supporting their son. It appears that the parties expended attorney's fees totaling about $40,000 and that Earl's were not significantly less that Annette's. The property awarded to Earl had substantially less relative value than that awarded to Annette, but the net disparity is not large in comparison with either the total fees the parties expended or Earl's adjusted annual income.

Earl relies on two cases in which we upheld the denial of attorney's fees. *See Johnson,* 564 P.2d at 76–77 (ruling that the superior court's denial of attorney's fees was reasonable); *Carstens v. Carstens,* 867 P.2d 805, 811 (Alaska 1994) (holding that it was reasonable to deny a motion for attorney's fees where the spouse moving for attorney's fees had received a significant cash settlement, but had a lower future earning capacity). Those cases are factually distinguishable from the case now before us. In *Johnson,* the court divided the property equally, and both spouses were bankrupt. 564 P.2d at 76–77. Therefore, the parties had comparable financial situations, and we held that the superior court did not abuse its discretion in denying a request for attorney's fees. *Id.* at 77. In *Carstens,* the spouse moving for attorney's fees received an $80,000 cash buy-out plus $20,000 for rehabilitative alimony. 867 P.2d at 810. We held that the superior court did not abuse its discretion in determining that it was equitable for the parties to pay their own fees

where the movant had received a large cash settlement and the other spouse had incurred significant debt. *Id.* at 811.

The disparity in the Beards' earning powers is so marked that the difference in the value of the assets awarded to each is of comparatively little importance. Because Earl and Annette do not have comparable economic situations, and Earl's overall financial situation is much more secure than Annette's, the superior court did not abuse its discretion in deciding to award substantial attorney's fees to Annette.

### 2. *Effect of conduct on attorney's fees award*

■■ The trial court has the discretion to increase an award of attorney's fees if a party has acted in bad faith or engaged in vexatious conduct. *Kowalski,* 806 P.2d at 1373 (citation omitted). Conduct justifying an increased award must be such that the parties are prevented from litigating the action on an equal plane. *See Wright,* 904 P.2d at 410–11 (increased fee award justified where husband failed to disclose marital assets and wife incurred great costs in searching for them); *Hartland,* 777 P.2d at 644 (increased fee award justified where husband "engaged in unwarranted delay"); *Horton v. Hansen,* 722 P.2d 211, 218 (Alaska 1986) (full award of attorney's fees justified where husband's behavior at trial was vexatious).

The superior court awarded $11,000 of the $15,000 requested by Annette. It justified the $4,000 reduction by Annette's vexatious litigation conduct.

Earl argues that given Annette's conduct, the court should not have awarded any attorney's fees to Annette. Earl claims that because in *Wright* we upheld the full award of attorney's fees on account of vexatious conduct, it was error to award any fees to Annette. 904 P.2d at 410–11.

Earl's emphasis on *Wright* is misplaced. In *Wright,* the superior court divided a marital estate worth several million dollars. *Id.* at 405–06. The husband's concealment of large amounts of marital funds increased litigation costs because the wife's counsel and accountant were forced to search for hidden

and dissipated assets. *Id.* at 410–11. Applying an abuse of discretion standard of review, *id.* at 410 n. 11, we held that a $125,000 fees award was not manifestly unreasonable. *Id.* at 411.

Annette's conduct was not as costly or egregious as the husband's actions in *Wright*, where the wife spent approximately $125,000 to investigate the husband's finances. *Id.* at 410–11. The superior court here found that Annette had not timely responded to the complaint, had violated repeated court orders to vacate the family residence, and had litigated and relitigated almost every issue. Moreover, the attorneys quarreled over discovery, settlement negotiations, and billing records filed on the motion for attorney's fees. Although Annette's conduct was vexatious, it was not nearly as serious as the husband's conduct in *Wright*, where the superior court remarked: "His actions bespeak those of a man who insists on defining his own terms of fairness. [The husband's] definition of fairness apparently does not include traditional notions of honesty, fair play and equality." *Id.* at 411 n. 13.

Additionally, Annette did not seek an award of full attorney's fees, which totaled over $22,000, but moved for a partial award of $15,000. The vexatious acts cited by the superior court did not require the complete denial of attorney's fees to Annette, who has few financial resources. We conclude that a trial court may rely on a divorcing party's misconduct to reduce or deny an otherwise appropriate fees award, under authority of AS 25.24.140(a)(1) and *Kowalski*, 806 P.2d at 1373. Given the circumstances presented here, the superior court did not abuse its discretion by reducing Annette's attorney's fees award rather than altogether denying any award.[4]

## IV. CONCLUSION

For these reasons, we conclude that the superior did not abuse its discretion by awarding $11,000 in additional attorney's fees to Annette.

AFFIRMED.

---

4. Annette has not cross-appealed on a theory that the superior court abused its discretion by taking her litigation conduct into account in awarding attorney's fees of $11,000, rather than the $15,-000 she had requested.