*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| GREGORY NUMANN, | ) |
| | ) Supreme Court No. S-18580 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-21-07318 CI |
| v. | ) |
| | ) O P I N I O N |
| DIANE GALLANT, f/k/a Diane | ) |
| Numann, | ) No. 7717 – September 6, 2024 |
| | ) |
| Appellee. | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Peter R. Ramgren, Judge.

Appearances: Gregory Numann, pro se, Lisbon, Ohio, Appellant. Erin Welden, Law Offices of Blake Fulton Quackenbush, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

HENDERSON, Justice.

## I.     INTRODUCTION

A husband appeals the superior court's division of his military retirement benefit from the date of separation rather than from the date of the final divorce decree. He also argues that the judge presiding over his case was biased against him. Observing no legal error or abuse of discretion in the court's division of the benefit, and no evidence of judicial bias, we affirm.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

Gregory Numann and Diane Gallant were married in 2002.  They have one child together who reached the age of majority before trial.  The parties separated in October 2016.  At that point they verbally agreed that they would maintain separate residences, that Numann would pay child support to Gallant,[1] that both parties would contribute equally to the child's college fund, and that each party would maintain their separate retirement accounts.[2]

Numann served in the military from 1989 to 2015, for a total of 26 years.  His military pension was worth about $730,000 when the parties separated.  Gallant had full- or part-time employment throughout the marriage and had two retirement accounts cumulatively worth about $30,000 at separation.

### B.  Proceedings

#### 1.  Divorce

Gallant filed for divorce in 2021, citing an incompatibility of temperament.  In her trial brief she asked to be awarded the marital home and for Numann to be awarded a condominium he purchased after separation.  She also sought 25% — or half of the marital portion — of Numann's military retirement benefit.[3]

---

[1]     Numann continued to pay child support to Gallant even after the child turned 18, and the court credited him for these payments in its final property division.  The court subtracted the value of the child support payments Numann made after the child turned 18 from the money he owed Gallant.

[2]     Gallant disagrees with Numann's characterization of the parties' agreement.  Numann now contends this "preexisting verbal separation agreement" was binding on the court, but he never made this argument to the superior court and thus did not preserve it for appeal.  *See McMullen v. Bell*, 128 P.3d 186, 190 (Alaska 2006) (explaining argument waived where raised for first time on appeal).  As a result we do not address this argument.

[3]     Gallant qualified for this portion of the benefit through the Uniformed Services Former Spouses' Protection Act.  *See* 10 U.S.C. § 1408.

In answering Gallant's complaint, Numann sought 27.5% of the equity in the marital home based on his contributions to the mortgage. He also asked that both parties retain their separate retirement accounts. Under Numann's preferred property division and calculations, Gallant would owe him an equalization payment of $30,636.

The superior court held a two-day divorce trial that ended in July 2022. At the end of the trial, the court issued a divorce decree and made several findings and conclusions on the record. The court asked Gallant's counsel to prepare written findings and conclusions, and it also invited the parties' further input if they believed there was a better way to evenly distribute the marital estate. In her proposed findings and conclusions, Gallant proposed that, in addition to receiving a portion of Numann's military retirement after their divorce, she should be awarded a sum equal to the accrued value of her portion of Numann's military retirement benefit since separation. Numann opposed Gallant's proposed findings and conclusions and requested a hearing to address potential issues with the court's anticipated division of marital property. In response the court held a hearing in late August. At the hearing Numann expressed concerns about the proposed award of "arrears" associated with his military retirement benefit. At this hearing and in later motions such as his motion for reconsideration,[4] he maintained that a final court order is required before a non-military spouse becomes entitled to a portion of the military retirement benefit, and that the court was prohibited from ordering he pay back retirement funds Gallant was never entitled to.

The court addressed Numann's concerns regarding division of his military retirement benefit in a second decision on the record. It agreed with Numann's understanding that Gallant could only seek direct payment from the Defense Finance

---

[4] The court denied the motion for reconsideration in January 2023. Numann also filed a motion to consider limiting the spousal retirement award on September 22, 2022. The court denied that motion as untimely because final judgment had been entered on September 21. Although Numann challenges this decision on appeal, we agree his motion was untimely and affirm the court's denial of that motion.

and Accounting Service (DFAS)[5] for her portion of the military retirement benefit pursuant to a final court order. However, the court also concluded the marital portion of the military retirement benefit was a marital asset. Because the marital portion of the military retirement benefit necessarily "accrued during the marriage," the court found Gallant "was entitled to her portion of th[e benefit] starting from the date of separation." The court believed it had authority to create such an award of "arrears"[6] under state law, even if the federal government would not enforce an award of arrears directly. Its final property division was fashioned accordingly.

The court issued its final findings of fact and conclusions of law in September 2022. In its findings and conclusions, the court made several preliminary decisions about assets it would award the parties and then essentially balanced these awards against each other to reach a final distribution of the marital property. It preliminarily credited Numann for 28% of the equity in the marital home and also gave him credit for child support payments made from the date the child reached the age of majority to trial. As for the condominium, the court determined it was Numann's separate property not subject to division. The court preliminarily ordered that the marital portions of the parties' three retirement accounts be divided as of the date of their separation. It also found that Numann owed Gallant $94,248.70, the value of half of the marital portion of the retirement payments Numann had collected over the 70 months since the parties separated in October 2016.[7] Meanwhile, Numann's portion of

---

[5]    DFAS is "the [federal] agency in charge of disseminating military retirement benefits." *See Villars v. Villars*, 277 P.3d 763, 767 (Alaska 2012).

[6]    As we discuss further in this opinion, the court's use of the term "arrears" was misplaced. Instead, the court in effect *recaptured* the marital portion of the military retirement funds when it calculated how much Gallant should have received from the military pension since the parties' separation. *See infra* Part IV.A.2.

[7]    The total value of the retirement payments Numann owed to Gallant was $108,248.70, less a credit for Numann's payment of child support after the child reached the age of majority.

Gallant's retirement accounts amounted to $15,762.57. After taking into account all equalization payments, credits, and divided assets, particularly Numann's equity interest in the marital home and in Gallant's retirement accounts, the court found that Numann would still owe Gallant $47,614.25. However, it noted that Gallant was "only collecting on past retirement to the amount that it equal[ed] the costs of equity in the home and her retirements" and that she "waive[d] all further remaining arrears with the understanding that [Numann] [wa]s not entitled to an equalization payment."

In light of this, in its final order, the court awarded Gallant the marital home and permitted her to retain her separate retirement accounts. Consistent with Gallant's request, the court also recognized that Numann would not be required to pay Gallant the amount he otherwise would have owed given Gallant's entitlement to a portion of Numann's military retirement benefit between the time of separation and the time of divorce. It awarded Gallant half the marital portion of Numann's military retirement benefit from the start of the month following the divorce decree, August 1, 2022, and moving forward.

Overall, the court found that its division of the marital property was fair and equitable, met the parties' need for finality, and was "consistent with the goal that the parties divide their assets 50/50 except for the home."[8] Numann appeals.

---

[8] The court also noted that Gallant was "foregoing . . . tens of thousands of dollars" owed to her in a true 50/50 marital property division in favor of receiving 100% equity in the marital home, as opposed to Numann retaining 28% equity in the home and owing Gallant around $50,000, which would leave the parties "entangled financially after [the] divorce."

## III.  STANDARD OF REVIEW

We review de novo whether the court's apportionment of a military retirement benefit is consistent with federal law.[9]  We also review de novo whether a judge exhibited bias under an objective standard.[10]

The equitable division of marital property is a three-step process that involves (1) determining the specific property available for distribution; (2) valuing the available property; and (3) equitably dividing the property available for distribution.[11]

Regarding step one, "[t]he characterization of property as separate or marital may involve both legal and factual questions."[12]  Whether the trial court applied the correct legal rule is a question of law that we review using our independent judgment.[13]  Findings about the parties' intent, actions, and contributions are factual in nature.[14]  "We review factual findings for clear error, which exists 'only when we are left with a definite and firm conviction based on the entire record that a mistake has been made.' "[15]

The second step, the valuation of property, requires factual findings reviewed for clear error.[16]  We review the third step, the equitable division of property,

---

[9]     *Worland v. Worland*, 240 P.3d 825, 829 (Alaska 2010).

[10]    *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019) (quoting *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018)).

[11]    *Beals v. Beals*, 303 P.3d 453, 458 (Alaska 2013).

[12]    *Brennan v. Brennan*, 425 P.3d 99, 104 (Alaska 2018) (quoting *Beals*, 303 P.3d at 459).

[13]    *Id.* at 105.

[14]    *Kessler v. Kessler*, 411 P.3d 616, 621 (Alaska 2018).

[15]    *Pasley v. Pasley*, 442 P.3d 738, 744 (Alaska 2019) (quoting *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017)).

[16]    *Id.*

for abuse of discretion.[17] We will not disturb the trial court's division "unless it is clearly unjust."[18]

New issues are generally not considered on appeal unless they amount to "plain error," meaning "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[19]

## IV. DISCUSSION

### A. The Court Did Not Err In Dividing Numann's Military Retirement Benefit.

#### 1. Federal law does not pose an obstacle to the court's division of the benefit.

Numann asserts the court violated the Uniformed Services Former Spouses' Protection Act (USFSPA) when it ordered "arrears" based on the value of the marital portion of the military retirement pay he received between separation and divorce. He argues that a final court order is required before a non-military spouse becomes entitled to any part of the military retirement benefit because a court order creates "an instrument of obligation." Relatedly he believes the fact the parties separated does not create such an obligation. As a result he contends the court erred by ordering that he pay Gallant a portion of the retirement funds he received before a court order entitling Gallant to those funds was in place. Gallant argues the court "acted within its discretion" by considering her entitlement to a portion of the retirement benefit as of the time of separation. We agree with Gallant that the superior court's consideration of her entitlement to a portion of the military retirement benefit as of the time of separation does not violate the USFSPA.

---

[17] *Beals*, 303 P.3d at 459.

[18] *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991) (quoting *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988)).

[19] *State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987) (citing *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)).

Federal law does not pose an obstacle to the court's division of the military retirement pay from the time of separation rather than from the time of divorce. Numann's argument centers on interpretation of subsection (c)(1) of the USFSPA, which states:

> [A] court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. A court may not treat retired pay as property in any proceeding . . . as the property of the member and the member's spouse or former spouse if a final decree of divorce . . . affecting the member and the member's spouse or former spouse (A) was issued before June 25, 1981, and (B) did not treat (or reserve jurisdiction to treat) any amount of retired pay of the member as property of the member and the member's spouse or former spouse.[20]

Numann interprets this clause to mean that "a court order is required" to be in effect before a non-military spouse is entitled to any portion of the military retirement pay from that point on, but we are not persuaded. A brief history of USFSPA clarifies the purpose and effect of this language.

In 1981 the United States Supreme Court decided in *McCarty v. McCarty* that federal law precluded state courts from dividing military retirement pay according to state community property law.[21] Congress responded to this decision when it enacted the USFSPA.[22] As passed in 1982, the USFSPA contained only the first sentence of

---

[20]     10 U.S.C. § 1408(c)(1).

[21]     453 U.S. 210, 232-36 (1981).

[22]     Pub. L. No. 97-252, 96 Stat. 730 (codified as amended at 10 U.S.C. § 1408); *see also Burts v. Burts*, 266 P.3d 337, 344 (Alaska 2011) ("Congress overruled *McCarty* by passing the [USFSPA], allowing state courts to treat a portion of a service member's military retired pay . . . as marital property divisible upon divorce according to state domestic relations law." (quoting *Young v. Lowery*, 221 P.3d 1006, 1011 (Alaska 2009), *abrogated on other grounds by Howell v. Howell*, 581 U.S. 214 (2017))).

what is now 10 U.S.C. § 1408(c)(1), allowing state courts to "treat disposable retired . . . pay payable to a member for pay periods beginning after June 25, 1981" as marital property subject to division under state law.[23]  Over the following years, state courts were, in Congress's view, "less than faithful in their adherence to the spirit" of the USFSPA.[24]  In 1990 Congress thus amended the statute to prevent state courts from relitigating final divorce decrees issued "before June 25, 1981," at least in cases where the final decree did not divide or reserve jurisdiction to divide military retirement benefits.[25]  Notably absent from this history is any indication that a court order need be in effect before a non-military spouse can become entitled to a portion of the retirement benefit from that point forward, as Numann argues.

The date of divorce in this case is July 19, 2022, over forty years after the June 25, 1981 date specified in 10 U.S.C. § 1408(c)(1).  The only applicable part of § 1408(c)(1) here, then, is the first sentence providing that "a court may treat disposable retired pay . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."  Our

---

[23]    Pub. L. No. 97-252, § 1002(a), 96 Stat. 718, 730-35 (1982).

[24]    H.R. REP. NO. 101-665 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 2931, 3005.  The House Armed Services Committee noted that several state courts, particularly in California, were abusing the USFSPA to reopen finalized pre-*McCarty* divorces.  *See id.*

[25]    *See* Pub. L. No. 101-510, 104 Stat. 1485, 1569-70 (1990) (codified as amended at 10 U.S.C. § 1408(c)(1)).  We explained in 1992 that the effect of the 1990 amendment was only to prohibit reopening certain divorce decrees "issued before June 25, 1981," and other state courts have uniformly held the same.  *See Johnson v. Johnson*, 824 P.2d 1381, 1383-84 (Alaska 1992); *see also Havlen v. McDougall*, 22 S.W.3d 343, 348 (Tex. 2000) (discussing "other state courts" that have "all construed the 1990 Amendment to prohibit reopening pre-*McCarty* divorce decrees"); *In re Marriage of Curtis*, 9 Cal. Rptr. 2d 145, 154 (Cal. App. 1992) (observing that "the 1990 amendments to [the USFSPA] refer to orders or judgments reopening pre-*McCarty* dissolutions").

precedent in turn recognizes that military retirement benefits accrued during marriage are marital property subject to equitable division.[26]

On appeal Numann contends that we endorsed his interpretation of the USFSPA, and its impact on division of military retirement benefits, in *Worland v. Worland* because in that case we awarded arrears pursuant to the date of the parties' initial settlement agreement rather than the date the parties separated.[27] But in so arguing, Numann mischaracterizes our holding in *Worland*.[28]

In *Worland*, the military spouse argued it was error to award pension payments before the parties were divorced because the non-military spouse only became entitled to those payments pursuant to a final court order.[29] We rejected that argument and concluded that the superior court may award the non-military spouse a share of the military pension that accrued prior to the issuance of a divorce decree.[30] We also affirmed the court's award of arrears to compensate the non-military spouse for past-due pension payments pursuant to the terms of the parties' initial settlement agreement.[31] We did so recognizing that before a final court order is in effect, the division of the benefit may not be enforced through payments directly from the federal government, and the federal government will not make payments to pay off an award

---

[26]     *See Root v. Root*, 851 P.2d 67, 68 n.3 (Alaska 1993); *Berry v. Berry*, 978 P.2d 93, 96 n.9 (Alaska 1999); *Clauson v. Clauson*, 831 P.2d 1257, 1261 (Alaska 1992); *Doyle v. Doyle*, 815 P.2d 366, 370 (Alaska 1991); *Lang v. Lang*, 741 P.2d 1193, 1196 (Alaska 1987); *Chase v. Chase*, 662 P.2d 944, 945-46 (Alaska 1983).

[27]     240 P.3d 825, 827, 830 (Alaska 2010).

[28]     While we take this opportunity to clarify our holding in *Worland* due to the centrality of this case to Numann's appeal, we again note that here the court's use of the term "arrears" was misplaced, and that the court in effect *recaptured* the marital portion of the military retirement funds. *See infra* Part IV.A.2.

[29]     240 P.3d at 830.

[30]     *Id.*

[31]     *Id.*

of arrears.[32]  But the USFSPA creates no barrier to recovering the non-military spouse's pension shares directly from the military spouse so long as the court's award complies with Alaska state law.

> **2.    The court's final distribution complied with Alaska law.**

In Alaska, "military retirement benefits may be equitably divided."[33]  The discretion we grant courts to equitably divide the pension means a court can determine a non-military spouse is entitled to a portion of the benefit starting at separation and order the military spouse to pay back relevant funds to the non-military spouse.[34]  The superior court correctly interpreted the USFSPA by deferring to Alaska law when it determined it could apportion the military retirement benefit for periods prior to the entry of a court order, or in this case, from the date the parties separated to the date the court issued its final decision.

Numann does not argue that the superior court's division of the marital portion of his military retirement benefit violated state law.  But given that the USFSPA enables courts to divide the military retirement benefit in accord with Alaska law,[35] we briefly address the applicable law in this area.

---

[32]    *Id.*; *see also* DEP'T OF DEF., DoD 7000.14-R, FINANCIAL MANAGEMENT REGULATION (2022), https://comptroller.defense.gov/Portals/45/documents/fmr/Volume_07b.pdf ("A former spouse can collect current retired pay award payments, but not retired pay award arrearages through DFAS.").

[33]    *Root v. Root*, 851 P.2d 67, 68 n.3 (Alaska 1993).

[34]    *See* AS 25.24.160(a)(4).

[35]    *See* 10 U.S.C. § 1408(c)(1).  This power is constrained by certain statutory limitations not implicated here.  *See id.* § 1408(e)(1) (state courts may not award non-military spouse more than 50% of retirement pay); *id.* § 1408(c)(3) (courts may not order military member to retire in order to effectuate payment under USFSPA); *id.* § 1408(c)(2) (courts may not "create any right, title, or interest [in retirement pay] which can be sold, assigned, transferred, or otherwise disposed of"); *id.* § 1408(a)(4)(A)(iii) (courts may not divide military member's disability benefits);  *see also Mansell v.*

As a preliminary matter, we observe that the court's use of the term "arrears" in describing Gallant's entitlement to a portion of the military retirement benefit paid out post-separation and prior to divorce was misplaced, but that error in terminology does not undermine the analysis supporting its division of the parties' property. "Arrears" are usually awarded to compensate an injured party for payment that is overdue pursuant to a valid obligation.[36] But here there was no court order or recognition of an obligation by Numann to pay a portion of his retirement to Gallant as of the parties' separation, so the court's use of the term "arrears" was misplaced. Instead, the court's property division relied upon Gallant's ability to recapture her portion of funds paid out to Numann from the time of separation through the entry of the divorce decree. The court effectively recaptured the marital portion of the military retirement funds when it calculated how much Gallant should have received from the military pension since the time of separation, minus a credit to Numann for child

---

*Mansell*, 490 U.S. 581, 589, 591-92 (1989) (concluding state courts may consider only "disposable retired pay" as marital property, not total retired pay; service members will sometimes waive retired pay to obtain disability benefits, which are not divisible under the USFSPA); *Guerrero v. Guerrero*, 362 P.3d 432, 440 (Alaska 2015) (noting state courts are prohibited from equitably dividing military members' "disability benefits received in place of waived retirement pay," but "neither the USFSPA nor prior Supreme Court decisions require our courts to completely ignore the economic consequences of a military retiree's decision to waive retirement pay in order to collect disability pay" (quoting *Clauson v. Clauson*, 831 P.2d 1257, 1262-63 (Alaska 1992))).

[36]     *See Arrear*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining arrears as "[t]he quality, state, or condition of being behind in the payment of a debt or the discharge of an obligation," "[a]n unpaid or overdue debt," or "[a]n unfinished duty"); *see also State, Dep't of Revenue, Child Support Enf't Div. v. Button*, 7 P.3d 74, 76-77 (Alaska 2000) (holding party was not required to pay arrears accrued before final support order was in effect).

support payments he made after the child reached the age of majority.[37] Numann makes no argument that the court failed to comply with state law in conducting this recapture analysis. And in the absence of any such argument, we see no plain error, particularly where — in the end — the court balanced recapture of just a portion of the funds potentially owing to Gallant against other obligations between the parties in order to avoid their prolonged financial entanglement and to reach a fair and equitable division of their property.[38] We therefore affirm the court's overall treatment of the marital portion of Numann's military retirement benefit.

### 3. We remand for the court to correct an inadvertent mistake.

The superior court appears throughout its findings and decision-making to have appropriately considered division of the marital portion of Numann's military retirement benefit, except that one of its final provisions toward the conclusion of its final written order purports to award half of the retirement benefit, without reference to the marital portion of the benefit. It appears that the court intended to award Gallant 50% of the marital portion of Numann's military retirement benefit, consistent with its stated intent to divide the marital property evenly after offsetting obligations between

---

[37] In general, "[p]arties who control a marital asset during separation may be required to compensate the other party if they dissipate or waste the asset or convert it to non-marital form." *Faris v. Taylor*, 444 P.3d 180, 186 (Alaska 2019). To effectuate this compensation, courts can "recapture" the dissipated assets by "crediting them against the responsible party's property distribution award." *Id.* Courts must support an award of recapture with "specific evidentiary findings of dissipation, waste, or conversion to a non-marital form." *Id.* at 187.

[38] *See Hess v. State*, 435 P.3d 876, 880 (Alaska 2018) (describing four-part test to establish plain error under Criminal Rule 47(b) (citing *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011))); *see also Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991) (stating we will not overturn court's final property distribution unless "clearly unjust" (quoting *Moffitt v. Moffitt*, 749 P.2d 343, 346 (Alaska 1988))); AS 25.24.160(a)(4) (stating courts divide property during divorce "in a just manner," and that courts may require a spouse to "assign, deliver, or convey" retirement benefits "when the balancing of the equities between the parties requires it").

the two, and consistent with the USFSPA.[39]  For instance, many of the court's findings of fact and statements within its decision on the record — and Gallant's own briefing on appeal — clearly anticipate that the court intended to divide only the marital portion of the retirement pay.  However, in one of the final paragraphs of its written order, the court directed that "[Gallant] is awarded 50% of [Numann's] military disposable retired pay," without reference to the marital portion of the benefit.  We remand for the court to correct this point of inconsistency.

### B.  There Is No Evidence The Court Was Biased Against Numann.

Numann argues the superior court judge who presided over his case was improperly biased against him, contending that the judge declared at the beginning of trial that Gallant had a right to Numann's military retirement pay.  Numann claims this created a cause of action that Gallant would not have otherwise pursued, which demonstrated "favoritism."  Gallant disputes Numann's claims of bias.

Numann's allegations of bias fail in part because they rely upon a mischaracterization of the record.  While Numann alleges that the court suggested Gallant should seek a portion of his military retirement pay, the record reflects that Gallant initiated the request without any improper suggestion by the court.  Indeed, Gallant's trial brief requested division of the military retirement benefit.  And Numann acknowledges in his brief on appeal that Gallant claimed "[f]rom the outset of trial . . . that she was moving for [Numann's] entitled retirement pay."  Because the record reflects Gallant sought a portion of the military benefit from the outset of divorce, we reject any allegations of bias based on contrary assertions.

Numann also references hearings in which he claims the court did not allow him to contest Gallant's right to his military retirement pay.  Our review of the contested hearings does not support these claims.  During the parties' first hearing in

---

[39]  10 U.S.C. § 1408(e)(1) (providing court's division of benefit "may not exceed" 50% of military member's retirement pay).

June 2022, Numann noted he had been unable to review Gallant's trial brief and that he was unprepared to respond to her request for a portion of the military retirement pay. In light of this the court granted his request for extra time, giving him one extra week to prepare for trial and the dispute over his retirement benefit. Similarly, the court held a hearing in August 2022 upon Numann's request so that he could express his concerns about the proposed recapture of his retirement benefit, among other issues. The court was responsive to the points Numann raised in its decision on the record. An objective review of the record contradicts Numann's allegations of improper bias.[40]

## V.    CONCLUSION

For the foregoing reasons, we AFFIRM the superior court's final property distribution, but REMAND for the court to correct one inconsistency in its award to Gallant of a portion of Numann's military retirement benefit.

---

[40]    *See Griswold v. Homer City Council*, 310 P.3d 938, 941 n.6 (Alaska 2013); *Phillips v. State*, 271 P.3d 457, 459 (Alaska App. 2012) (explaining appearance of bias is assessed according to whether "given the circumstances, reasonable people would question the judge's ability to be fair").