NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| BURTON HAVILAND, JR., | ) | |
| | ) | Supreme Court No. S-19186 |
| Appellant, | ) | |
| | ) | Superior Court No. 3KN-23.0029 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KIMBERLY HAVILAND, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2114 – October 8, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Lance Joanis, Judge.

Appearances: Burton Haviland, Jr., pro se, Sterling, Appellant. Kimberly Haviland, pro se, Soldonta, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I.     INTRODUCTION

2019, a husband and wife signed an agreement purporting to divide their assets and debts in the event of their separation and divorce. At their divorce trial in 2024, the superior court concluded that the agreement was valid and incorporated the agreement into its property division order. The husband appeals the property division order. He challenges the superior court's finding that he voluntarily entered into the

---

\*      Entered under Alaska Appellate Rule 214.

agreement in 2019, and he contends that the resulting division of marital assets was inequitable.

We conclude that the superior court did not clearly err in finding that the husband voluntarily entered into the 2019 agreement, and it did not abuse its discretion in determining that the property distribution was fair and equitable. We therefore affirm the superior court's decision.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Burton Haviland, Jr. and Kimberly Haviland were married in October 2000. A death in the family and Burton's struggles with alcoholism led to conflict in the marriage, and the parties discussed separation on at least two occasions before they permanently separated in April 2022. During earlier periods of marital turmoil, the parties signed two agreements that affected the final distribution of marital assets.

In January 2014, the parties signed a document titled "Separation Agreement" (2014 agreement) that divided the parties' real estate, vehicles, and debts between them. The 2014 agreement allocated the parties' primary residence in Soldotna to Kimberly.

In February 2019, Kimberly used her inheritance to pay the outstanding balance on the mortgage of the primary residence. Then, in April, the parties signed a separate document titled "Division of Assets & Property Agreement" (2019 agreement). The 2019 agreement described how the parties intended to manage their property during a separation period and, if the parties did not reconcile, how they would divide property. It provided that it was "intended to be a final disposition of the matters addressed [t]herein" and that it would be "incorporated into a final decree of divorce or dissolution should the need arise." It divided the parties' real estate, vehicles, and debts, and it provided that "[the parties] agree to waive any rights that each may have in the pension of the other." Like the 2014 agreement, it allocated the parties' primary residence to Kimberly, as well as two of the parties' vehicles. In receiving sole

possession of the primary residence, Kimberly "agree[d] to pay all expenses associated with living in the home, including but not limited to taxes, insurance, utility bills, and maintenance costs."  Burton received three other properties and one vehicle.

B.     **Proceedings**

In April 2023, Kimberly filed for divorce.  The superior court held a divorce trial in June 2024.  Prior to trial, the parties submitted a joint table describing their recommendations for the division of assets and debts.  According to the table, the parties agreed on the valuation and division of all assets except the parties' retirement accounts, the primary residence, and a few other miscellaneous items.

At trial, the parties both testified regarding the 2019 agreement.  Kimberly explained that she had presented the agreement to Burton in the kitchen at their primary residence, where they each signed it.  She asserted that the parties signed the agreement in the morning, at which time Burton was sober and "appeared clearheaded."  She further testified that she had asked Burton if there was anything he wanted her to change in the agreement before he signed it, and he had said no.

In his testimony, Burton conceded that the signature on the 2019 agreement appeared to be his own, but he asserted that he did not remember signing the document.  He opined that the agreement "leaves [him] nothing" and that he "wasn't in [his] right mind" when he signed it.

The superior court credited Kimberly's testimony that both parties signed the agreement and that Burton was sober when he did so.  Although the court recognized that the agreement divided the parties' assets unequally, it acknowledged that Kimberly had used her inheritance to pay the mortgage on the parties' highest value asset, the primary residence.  The court found both that Burton had freely entered into the 2019 agreement and that the terms of the agreement were not unconscionable.  It then incorporated the 2019 agreement and the joint property table into the property division, which it determined to be fair and equitable.

Burton appeals two of the superior court's findings: (1) that the 2019 agreement was valid and (2) that the allocation of property and debts between the parties was fair and equitable.

## III. STANDARD OF REVIEW

We review the superior court's factual findings — including its determinations as to duress, undue influence, and unconscionability — for clear error.[1] "Clear error exists 'only when we are left with a definite and firm conviction based on the entire record that a mistake has been made.' "[2]

There are three steps to the equitable division of property: "(1) determining the specific property available for distribution; (2) valuing the available property; and (3) equitably dividing the property available for distribution."[3] "We review the third step, the equitable division of property, for abuse of discretion."[4] This means that "[w]e will not disturb the trial court's division 'unless it is clearly unjust.' "[5]

## IV. DISCUSSION

Burton argues that the 2019 agreement is not enforceable because he was struggling with "alcoholism and blackouts" at the time of signing. We have recognized that a property division agreement "should be controlling in the absence of fraud, duress, concealment of assets or other facts showing that the agreement was not made

---

[1] *Morris v. Morris*, 506 P.3d 8, 13 (Alaska 2022); *In re Adoption of S.K.L.H.*, 204 P.3d 320, 328-29 (Alaska 2009) (explaining that undue influence and duress are factual findings reviewed for clear error); *Horton v. Hansen*, 722 P.2d 211, 216 (Alaska 1986) (explaining that unconscionability is factual finding reviewed for clear error).

[2] *Morris*, 506 P.3d at 13 (quoting *Pasley v. Pasley*, 442 P.3d 738, 744 (Alaska 2019)).

[3] *Numann v. Gallant*, 555 P.3d 527, 532 (Alaska 2024).

[4] *Id.*

[5] *Id.* (quoting *Doyle v. Doyle*, 815 P.2d 366, 368 (Alaska 1991)).

voluntarily and with full understanding."[6]  Here, we read Burton's argument as raising the contract defenses of lack of mental capacity, undue influence, duress, and unconscionability, all of which his trial lawyer raised before the superior court.[7]

We discuss each of these concepts in greater depth below.  Ultimately, because the superior court did not clearly err in its determination that Kimberly's testimony was credible, we do not disturb its conclusion that Burton entered into the 2019 agreement freely and voluntarily.  Furthermore, because Burton did not present evidence of a "vast disparity of bargaining power" between himself and Kimberly, we conclude that the superior court did not clearly err in its finding that the 2019 agreement was not unconscionable.[8]

A.   **The Superior Court Did Not Clearly Err In Finding That Burton Had Capacity To Enter Into The 2019 Agreement.**

Burton asserts that he would not have signed the 2019 agreement "if he had been sober and in good health."  But the superior court credited Kimberly's testimony that he was clear-headed and sober when he signed the agreement, and we "grant especially great deference when the trial court's factual findings require weighing the credibility of witnesses and conflicting oral testimony."[9]  Moreover, although Burton testified regarding his struggles with alcoholism in 2019, he did not

---

**6**      *Notkin v. Notkin*, 921 P.2d 1109, 1111 (Alaska 1996) (emphasis omitted) (quoting *Kerslake v. Kerslake*, 609 P.2d 559, 560 n.1 (Alaska 1980)).

**7**      *Tobar v. Remington Holdings LP*, 447 P.3d 747, 753 (Alaska 2019) (acknowledging that briefs of self-represented litigants "are to be read generously").

**8**      *See Jones v. Jones*, 505 P.3d 224, 232 (Alaska 2022) (quoting *Askinuk Corp. v. Lower Yukon Sch. Dist.*, 214 P.3d 259, 268 (Alaska 2009)).

**9**      *Stanhope v. Stanhope*, 306 P.3d 1282, 1287 (Alaska 2013) (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 178 (Alaska 2009)).

offer evidence that he was intoxicated at the time that he signed the agreement. We defer to the superior court's credibility determination and affirm this factual finding.**10**

B. **The Superior Court Did Not Clearly Err In Finding That Kimberly Did Not Subject Burton To Duress Or Undue Influence.**

A contract is void on grounds of duress if there is "clear and convincing evidence that (1) one party involuntarily accepted the terms of the other party, (2) circumstances permitted no other alternative, and (3) such circumstances were the result of coercive acts of the other party."**11** Undue influence occurs if one party exercises control over another party that "(1) deprives that person of freedom of choice or overcomes that person's free will and substitutes the will of another in its place[;] (2) 'precludes [that person's] exercise of free and deliberate judgment'; or (3) 'coerces [that] person into doing something' " that the person would not have done otherwise.**12** While Burton may have been fearful of losing his relationship with Kimberly, he did not testify that she induced his involuntary acceptance of the 2019 agreement through threats or coercive acts. The superior court did not clearly err in finding that neither of these defenses applies here.

---

**10** Burton relies on *Andrew B. v. Abbie B.*, 494 P.3d 522 (Alaska 2021), a case concerning prenuptial agreements, to support the assertion that he did not enter into the 2019 agreement voluntarily. At the time that the agreement was signed, Burton and Kimberly were in the process of separating and thus were not similarly situated to parties about to marry. *See id.* at 539 (explaining that engaged parties tend to consider mutual interest instead of self-interest when executing prenuptial agreements). *Andrew B.* does not apply here.

**11** *Id.* at 539 n.53.

**12** *In re Adoption of S.K.L.H.*, 204 P.3d 320, 328 n.41 (Alaska 2009) (second and third alterations in original) (quoting 25 AM. JUR. 2D *Duress and Undue Influence* § 36 (2004)).

C.     **The Superior Court Did Not Clearly Err In Finding That The 2019 Agreement Was Not Unconscionable.**

An agreement may be unconscionable if there exists a "vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party."[13] Here, the superior court found that the 2019 agreement was not unconscionable because Kimberly had used her inheritance to pay off the remainder of the mortgage on the parties' primary residence and because the agreement allocated other real estate to Burton. The court acknowledged that the inheritance may have been transmuted from separate property to marital property when Kimberly used it for the marital residence, but it found that she was "essentially reclaiming [the inheritance] as her separate property" via the 2019 agreement.[14]

We do not adopt the superior court's reasoning that the 2019 agreement served as a means for Kimberly to reclaim her inheritance as separate property. However, we affirm the superior court's implicit findings that Burton failed to demonstrate either a vast disparity of bargaining power or contract terms that were "unreasonably favorable" to Kimberly. Although there is no evidence that Burton played a role in drafting the 2019 agreement, the court credited Kimberly's testimony that he had an opportunity to edit it. Moreover, while the court acknowledged that the 2019 agreement distributed the parties' assets unevenly, it also noted that the parties signed an agreement with similar terms in 2014.[15] And "[i]nadequacy of consideration

---

[13]     *Jones*, 505 P.3d at 232 (Alaska 2022) (quoting *Askinuk Corp.*, 214 P.3d at 268).

[14]     *See Miller v. Miller*, 105 P.3d 1136, 1142 (Alaska 2005) ("Inherited property is separate, even if received during marriage, though it can be transmuted into marital property where that is the intent of the owner.").

[15]     Both the 2014 agreement and the parties' joint property table allocated the primary residence to Kimberly.

does not of itself invalidate a bargain."[16]  We therefore conclude that the superior court did not clearly err in its determination that the 2019 agreement was not unconscionable.

D. **The Superior Court Did Not Abuse Its Discretion In Determining That The Allocation Of Property And Debts Was Fair And Equitable.**

Finally, we reject Burton's argument that the superior court failed to divide the parties' assets fairly and equitably.  The superior court divided the parties' assets and debts according to the terms of the 2019 agreement and the joint property table.  It then noted that the parties disagreed as to the distribution of one set of items not included in the 2019 agreement — their DVDs — and it allocated sole possession of those DVDs to Burton.  Burton does not challenge the distribution of the DVDs, and Kimberly does not challenge any element of the property distribution.

Because the court did not err in approving the 2019 agreement, we cannot say that the superior court abused its discretion in approving the unequal property distribution.

V. **CONCLUSION**

We AFFIRM the superior court's property division order.

---

[16]     RESTATEMENT (SECOND) OF CONTS. § 208 cmt. c (AM. L. INST. 1981).