NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FESTUS K. JIBADE, | ) | |
| | ) | Supreme Court No. S-19271 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-22-08424 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| OLUKEMI A. OGUNNIYI, | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2125 – December 31, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Andrew Guidi, Judge.

Appearances: Festus Jibade, pro se, Anchorage. No appearance by Appellee Olukemi Ogunniyi.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

I.    **INTRODUCTION**

A couple opened an assisted living facility shortly after they married. A few years later, they divorced. The superior court found that the husband dissipated marital assets by improperly using business revenue for personal uses and divided the estate 70/30 in the wife's favor. The husband, now self-represented, appeals. He argues that the court abused its discretion by excluding evidence that would have shown he used the business funds to reimburse himself for business expenses; that it made legal

---

\*    Entered under Alaska Appellate Rule 214.

and factual mistakes with respect to the marital business and home; and that the judge was biased against him. Seeing no error or abuse of discretion, we affirm the superior court decision.

## II. FACTS AND PROCEEDINGS

Festus Jibade and Olukemi Ogunniyi married in September 2020. Shortly thereafter, they opened an assisted living facility together, Bethsaida Assisted Living, LLC (Bethsaida). They were the sole members of the business and split its ownership 50/50. They operated it from their marital home, which they also owned jointly.

To obtain an operating license, Bethsaida was required to have a qualified administrator.[1] Ogunniyi, a nurse, met the necessary qualifications and served in that role. Bethsaida's license was approved in March 2021, and the facility took in its first patient several months later.

Because their patients required full-time care, Jibade and Ogunniyi lived in the facility. Ogunniyi also periodically took travel nursing assignments in Bethel. During this time, Jibade — who managed Bethsaida's finances — paid himself a salary. Ogunniyi was not paid. In November 2021 she resigned from her role as administrator.

Jibade filed for divorce in September 2022. Ogunniyi said that when she tried to return to Bethsaida after a trip to Bethel in November, an employee informed her that Jibade had moved another woman into the home and that Ogunniyi was not permitted to return. Ogunniyi then withdrew nearly $23,000 from Bethsaida's business account and moved out of state. Jibade asked the court to order her to return the funds, but, after an evidentiary hearing, the court found that Ogunniyi had used them for needs relating to the divorce and denied Jibade's request.

Around the same time, Jibade removed Ogunniyi as a member of Bethsaida and assumed 100% ownership of the business. Ogunniyi did not authorize

---

[1] *See* 7 Alaska Administrative Code (AAC) 75.080, .210(a)(2), .230.

the changes and was not aware of them. Jibade also removed her access to Bethsaida's bank account.

In May 2023 Ogunniyi asked the court to grant her interim control of Bethsaida. She alleged that Jibade was "grossly mishandling" the business's finances or committing fraud. Based on her knowledge of Bethsaida's operations and revenue, she asserted that the business should be reporting significant profits. Instead, she said, Jibade had claimed tens of thousands of dollars in losses and Bethsaida's bank statements revealed undisclosed and unaccounted-for transfers. Ogunniyi argued that she needed to manage Bethsaida's finances to prevent marital waste. The court granted her motion to prevent the waste of marital assets and ordered Jibade to immediately reauthorize Ogunniyi as a 50% owner and member of Bethsaida, give her access to all business accounts and financial information, and take any other necessary steps to restore her access to and control of the business by July.

Two days before the deadline, Jibade moved for a stay of the order.[2] Ogunniyi moved to enforce the order, arguing that Jibade's motion was a delay tactic to give him time to close the business. She asked the court to issue a show cause order and award her attorney's fees for defending against Jibade's frivolous and bad faith motions. The court scheduled a hearing for late September.

The day before the scheduled hearing, Jibade moved to disqualify the assigned judge. He claimed that the judge's spouse represented Jibade's attorney's former employer and had threatened litigation against her in that capacity. Consequently, the court vacated the hearing until it ruled on Jibade's motion. Ogunniyi opposed disqualification, calling Jibade's motion another delay tactic.

The court rejected the recusal motion. The judge first denied any knowledge of his spouse's clients' confidential matters. But he observed that the

---

[2] He withdrew his motion several weeks later.

knowledge his spouse was or could be engaged in litigation against Jibade's attorney would not show that he was biased against the attorney. He noted that Jibade's attorney had not provided any specific evidence of bias against her. The court concluded that Jibade's arguments did not "meet or even approach the legal requirements necessary to support disqualification."[3]

The court subsequently rescheduled the show cause hearing to November 2023. Based on the evidence prsesented, it found that Jibade had "made no real effort to transition the business" to Ogunniyi, continued to spend the business's income, and lost clients. If it allowed his "behavior to continue as it has been," the court warned, "there soon will not be much of any asset left to distribute" in the divorce. It ordered him to cede control of Bethsaida to Ogunniyi by early January and pay her attorney's fees regarding the show cause motion and hearing.

A three-day trial was held in June 2024. Ogunniyi alleged that Jibade illegitimately took over $100,000 from Bethsaida for personal uses. She asked the court to credit him with those withdrawals and divide the estate 70/30 in her favor because he unreasonably depleted marital assets.[4] Ogunniyi testified that she did not consent to and never intended to leave the business. She stated that she had resigned as administrator because Jibade did not listen to her professional advice and she feared that she would lose her nursing license if the State shut down the facility. Ogunniyi also stated that she had been unable to take a long-term position while she waited for Jibade to comply with the court's order to restore her control of Bethsaida. She said that Jibade left the business in ruins; it had no patients or employees by the time he

---

[3]    Another superior court judge reviewed and affirmed the order. *See* AS 22.20.020(c) (requiring second judge to review denial of motion to disqualify).

[4]    *See* AS 25.24.160(a)(4)(E) (providing that court must consider parties' conduct, "including whether there has been unreasonable depletion of marital assets" when dividing property in divorce).

returned it to her in early January 2024. The business operating account, she testified, held just over $600 at the time of trial.

Jibade denied taking money for personal expenses from the business. He testified that the personal expenses and withdrawals on the business account were reimbursements for business expenses and claimed to have records tracking them. The court asked him to bring his records the next day, but, when given the opportunity, Jibade did not present them.[5] On the third day of trial, just before closing arguments, his counsel presented several documents to the court. The court stated that it would not admit them because reopening Jibade's testimony would prolong the trial beyond its scheduled conclusion. Jibade's attorney replied that she was not asking to admit them, clarifying that she brought them to the court's attention to show Jibade's compliance with its earlier request. The documents were not admitted.

The court subsequently issued findings of fact and conclusions of law. It rejected Jibade's claim that the personal expenses and withdrawals from the business account were reimbursements; it did not find his testimony credible and noted that he did not provide any of the substantiating records he claimed to have. It found that Jibade withdrew $104,362 in personal draws from the business and assigned that value to him. The court determined that Bethsaida was worth $500 as of the time of trial and awarded it to Ogunniyi, finding that Jibade "forcibly and wrongfully removed" her from the business. It also denied Jibade's request to be credited $17,000 for his contribution to the down payment for the marital home.

The court divided the estate 70/30 in Ogunniyi's favor. It found that Jibade ran Bethsaida "into the ground," "spen[ding] generously from the business operating account for personal gain" and leaving Ogunniyi "with a drained operating account, no employees, no state contracts, and no patients." His behavior, it concluded,

---

[5] Jibade said that he brought them to court that day, but when he was asked about them, his attorney said they were being marked in a different room.

"substantially damaged the marital estate." The court ordered Jibade to make an equalization payment of $72,196.

Jibade appeals, challenging the exclusion of his reimbursement records, the property division, and the court's decision not to recuse.

## III. STANDARDS OF REVIEW

"We review the superior court's evidentiary rulings, including the exclusion of evidence, for an abuse of discretion. 'Errors in the admission or exclusion of evidence warrant reversal only if necessary to ensure substantial justice.' "[6]

The division of marital property in a divorce proceeding involves three steps: "(1) determin[ing] what property is available for distribution [i.e., classifying property as marital or separate], (2) find[ing] the value of the property, and (3) divid[ing] the property equitably."[7] In the first step, "[w]e review the characterization of property as separate or marital for clear error with respect to any '[u]nderlying factual findings as to the parties' intent, actions, and contributions to the marital estate,' and de novo with respect to 'whether the [superior] court applied the correct legal rule.' "[8] In the second, we review "[t]he trial court's determination of which date to use for the purposes of valuing property . . . for an abuse of discretion" and the valuation of available property for clear error.[9] The trial court has "broad discretion" in the third

---

[6]     *Anderson v. Wilson*, 555 P.3d 13, 20 (Alaska 2024) (footnote omitted) (quoting *Guilford v. Weidner Inv. Servs., Inc.*, 522 P.3d 1085, 1093 (Alaska 2023)) (internal quotation marks omitted).

[7]     *Layton v. O'Dea*, 515 P.3d 92, 100-01 (Alaska 2022) (quoting *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019)).

[8]     *Id.* at 101 (second and third alteration in original) (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013)).

[9]     *Stevens v. Stevens*, 265 P.3d 279, 284 (Alaska 2011) (quoting *Haines v. Cox*, 182 P.3d 1140, 1143 (Alaska 2008)).

step "to provide for the equitable division of property."[10]  We review the division for abuse of discretion and "will reverse only if the division is clearly unjust."[11]

We review "[a] judge's decision that he is actually capable of conducting a fair trial . . . for abuse of discretion."[12]  Whether a judge appears biased, however, is a question of law which we review de novo under an objective standard.[13]

## IV.   DISCUSSION

### A.    The Superior Court Did Not Abuse Its Discretion By Not Admitting Jibade's Exhibits.

Jibade argues that the superior court improperly excluded receipts and account information that he claims "could have explained why the business funds were being transferred" to his personal account.  He testified that he kept records tracking the reimbursements that he gave himself for business expenses paid by his personal accounts and claimed to have brought the records on the second day of trial.  But he did not present them when asked by the court.  On the final day of trial, just before closing arguments, his attorney presented several documents to the court to show Jibade's compliance with its earlier request.  In response to the court's observation that admitting the documents would prolong the trial because Jibade's testimony would have to be reopened, his attorney again stated that she was not asking to admit them.  Therefore, the superior court did not abuse its discretion by not considering the documents.

Nor did the court abuse its discretion by refusing to reopen Jibade's testimony.  "The trial court is vested with wide discretion in controlling the order of proof."[14]  After Jibade concluded his case in chief, he could introduce rebuttal evidence

---

**10**     *Layton*, 515 P.3d at 101 (quoting *Ethelbah v. Walker*, 225 P.3d 1082, 1086 (Alaska 2009)).

**11**     *Id.* (quoting *Ethelbah v. Walker*, 225 P.3d 1082, 1086 (Alaska 2009)).

**12**     *Heber v. Heber*, 330 P.3d 926, 934 (Alaska 2014).

**13**     *Mengisteab v. Oates*, 425 P.3d 80, 91 (Alaska 2018).

**14**     *Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1277 (Alaska 1988).

only, unless justice and good reason required otherwise.[15]  Rebuttal evidence "is any competent evidence which explains, is a direct reply to, or a contradiction of material evidence introduced by . . . a party in a civil action."[16]  It "should not merely . . . corroborate evidence already presented."[17]  Jibade's records were meant to corroborate his prior testimony that several transfers from Bethsaida's business account were reimbursements.  The superior court therefore did not abuse its discretion by excluding evidence that properly belonged in his case in chief.[18]

### B.  The Superior Court Did Not Clearly Err Or Abuse Its Discretion When Dividing The Marital Estate.

Jibade also challenges several aspects of the property division.  He argues that the court failed to consider his post-separation contributions to the marital business, that Ogunniyi surrendered her ownership interest in the business when she resigned from her administrator position, and that the court erred when it found that he did not pay her.  He also contends that the court undervalued the marital business and that he should be credited for his contribution to the down payment of the marital home.  We do not see any clear errors in the court's findings or abuse of discretion.  Nor do we see any plain error in its legal analysis.  We therefore affirm the property division.

#### 1.  Marital business

Jibade makes several arguments about the superior court's treatment of the marital business.  The court concluded that the business was marital, finding that Ogunniyi "was forcibly and wrongly removed" and "did not give up her ownership interest voluntarily."  Jibade, it determined, "r[a]n [the business] into the ground" before

---

[15]  Alaska R. Civ. P. 46(c).

[16]  *Sirotiak*, 758 P.2d at 1277 (alteration in original) (quoting *Riffey v. Tonder*, 375 A.2d 1138, 1145 (Md. App. 1977)).

[17]  *Id.*

[18]  *See id.* ("Whether evidence is proper rebuttal evidence lies within the trial court's sound discretion.").

he complied with the court's order to turn it over to Ogunniyi. The court found that the business was worth $500 at the time of trial and that Jibade had wrongfully withdrawn $104,362 from the business, "spend[ing] generously from the business operating account for personal gain." It awarded the business to Ogunniyi and credited Jibade with $104,362 in unauthorized personal draws.

Jibade first argues that the court improperly accounted for the business income and consequently abused its discretion by awarding the business to Ogunniyi and dividing the estate in her favor. He contends that the business income that was generated after she resigned should not be considered as part of the marital estate because it was the result of his work alone. The court abused its discretion, he continues, because it failed to account for his contributions to the business and Ogunniyi's lack thereof.

This argument is not convincing. While a spouse's post-separation income is separate property,[19] the post-separation income of a marital business is the property of the marital business and thus, the marital estate — regardless of which spouse contributed to the increased income.[20] When dividing the estate, the court must consider post-separation contributions to maintain marital property, but it has discretion to decide whether to grant a party credit for those contributions.[21] And it also must consider the parties' conduct, including "whether there has been unreasonable depletion of marital assets."[22]

---

[19] *Brown v. Brown*, 914 P.2d 206, 208 (Alaska 1996), *abrogated on other grounds by Beals v. Beals*, 303 P.3d 453, 463 n.47 (Alaska 2013).

[20] *Cf.* 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:105, at 900 (4th ed. 2024) (explaining that changes in value of property owned by one or both spouses, like marital businesses, are marital property).

[21] *Rohde v. Rohde*, 507 P.3d 986, 995 (Alaska 2022).

[22] AS 25.24.160(a)(4)(E).

The superior court properly considered the parties' relative contributions to the marital estate. It recognized that Jibade maintained exclusive control over the business between November 2022 and January 2024 and found that he left the business with "a drained operating account, no employees, no state contracts, and no patients." The court also found that Ogunniyi had attempted to return to Bethsaida but was "ushered out" and told "not to return." It further determined that she did not voluntarily give up her ownership interest, and that Jibade secretly removed her share and cut her off from all of the business accounts. When the court ordered him to return the business to her, Jibade delayed for months. As a result, the court concluded that Ogunniyi "should not be penalized for being away from the business that she was forced out of." Based on these findings, which are supported by the record, the court did not abuse its discretion by denying Jibade credit for his post-separation contributions and dividing the estate in Ogunniyi's favor.[23]

Jibade also argues that the court misunderstood Ogunniyi's resignation as the business administrator. He claims that Ogunniyi's only contribution to the marital business was her work as its administrator. Therefore, when she resigned from that role, he argues that she withdrew from the business.

But Jibade overlooks that Ogunniyi's role as administrator was separate from her status as a 50% member in the business. She did not forfeit her ownership in the marital business when she resigned as administrator. Jibade cites AS 10.50.185 for support, but under that law, a member of an LLC may not resign "except at the time or upon the happening of events specific in the operating agreement of the company and in accordance with the operating agreement of the company."[24] Jibade did not provide

---

[23] *See Hudson v. Hudson*, 532 P.3d 272, 282 (Alaska 2023) (collecting cases).

[24] AS 10.50.185(a).

any evidence that Ogunniyi's resignation as administrator triggered her resignation as a member of the business.

Jibade further insists that Ogunniyi's resignation was intentional interference with the marital business and should have been considered as such in the division of the marital estate.[25] The court did not err when it found that her resignation was not an attempt to sabotage the business. Ogunniyi testified that she resigned because she feared that she risked losing her nursing license if she continued serving as the assisted living facility's administrator. She testified that her resignation as administrator did "not mean that [she] resigned as a business owner" and that she continued working behind the scenes as a compliance officer. Even if her absence required Jibade to hire a replacement administrator, there is no evidence that her resignation damaged the value of the marital estate or that she intended to deprive Jibade of his share.[26]

Jibade additionally argues that the court erred by finding that he did not pay Ogunniyi while spending business funds on himself. He asserts that because Ogunniyi was not working as the administrator, she was not owed any payment. But this argument misstates the court's finding. The court determined that Ogunniyi "received no compensation *for her work*." (emphasis added.) And the record supports that finding. Ogunniyi testified that she was never paid for her work at Bethsaida; Jibade agreed. Jibade testified that he paid himself biweekly as an employee, earning about $64,000 annually, and evidence showed that he additionally withdrew over $100,000 for personal use. Despite his claims that the withdrawals were reimbursements for business expenses, he failed to provide any records to verify those

---

[25] *See* AS 25.24.160(a)(4)(E).

[26] *See Hudson*, 532 P.3d at 283 (holding no economic misconduct when wife's actions did not negatively impact marital estate's value or decrease husband's share).

claims. The court did not find his testimony credible. Given the "particular deference" that the court's factual findings are owed when they are based on trial testimony,[27] the court did not clearly err by finding that Jibade spent business funds on himself and did not pay Ogunniyi.

Finally, Jibade argues that that the court undervalued the marital business. In his view, the court should have considered the value of the business from the date that he transferred control to Ogunniyi, at which time he claims its operating account held $40,000. He also suggests that Ogunniyi's testimony was not reliable and therefore the court erred by finding that the business was worth $500 at the time of trial.

Jibade did not present his valuation-date argument to the superior court, so we review it for plain error: "an obvious mistake [that] has been made which creates a high likelihood that injustice has resulted."[28]

As a preliminary matter, we observe that the court addressed the marital business and its revenue separately rather than as a single marital asset, but that error in framing does not undermine the analysis supporting its division of the parties' property. The business is a separate entity. Its income belongs to it and therefore is third-party property. Property that belongs to a third party is not subject to division.[29] But because the business is a marital business, its property is part of the marital estate insofar as it relates to the value of the marital business.[30] If its income is wrongly dissipated, then

---

[27] *Downs v. Downs*, 440 P.3d 294, 298 (Alaska 2019) ("[T]he trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence." (quoting *Limeres v. Limeres*, 320 P.3d 291, 296 (Alaska 2014) (internal quotation marks omitted))).

[28] *Numann v. Gallant*, 555 P.3d 527, 532 (Alaska 2024) (quoting *State v. Nw. Constr., Inc.*, 741 P.2d 235, 239 (Alaska 1987) (internal quotation marks omitted)).

[29] *Pasley v. Pasley*, 442 P.3d 738, 745 n.16 (Alaska 2019).

[30] *See, e.g.*, *May v. Peterson*, 565 P.3d 194, 205 (Alaska 2025) (affirming valuation based on market value of marital business's assets).

the resulting reduction in the business's value can be recaptured to make the estate whole.[31] To recapture a dissipated asset, the court may value it at an earlier date and credit "all or part" of that value to the spouse responsible for the dissipation.[32]

The court effectively recaptured the business value that was lost during separation when it calculated how much the business was worth at the time of trial and the amount of business revenue that Jibade improperly withdrew for personal use. Jibade acknowledges that the business income should be treated as part of the marital estate if it was shown to be unreasonably diminished or misused. He does not argue that the court erred in conducting this recapture analysis. And in the absence of such argument, we see no plain error where the court estimated the present value of the business at the date of trial instead of the date Jibade gave Ogunniyi control of the business, particularly when there is no evidence in the record indicating that the business account held $40,000 when Jibade turned it over to Ogunniyi. To the contrary, the court found that it held $19,048.27 when he reauthorized her — and he still continued draw from it, including $11,590.60 in attorney's fees that he was ordered to pay Ogunniyi.

And the court's valuation is supported by the record. Ogunniyi testified that the business account's balance was $657.58 at the time of trial. Jibade says that

---

[31]     2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:105, at 900 (4th ed. 2024) ("Where the third party is a marital property entity owned by one or both parties, however, any reduction in the value of the entity resulting from the transfer may be marital property."). A spouse "who control[s] a marital asset during separation may be required to compensate the other party if they dissipate or waste the asset or convert it to non-marital form. A superior court may effect this compensation by ordering 'recapture' of such assets . . . ." *Faris v. Taylor*, 444 P.3d 180, 186 (Alaska 2019) (footnote omitted) (quoting *Ethelbah v. Walker*, 225 P.3d 1082, 1090 (Alaska 2009)).

[32]     *Miller v. Miller*, 105 P.3d 1136, 1144 n.31 (Alaska 2005); *accord Faris*, 444 P.3d at 186.

the court should not have relied on her testimony, alleging that she lied about their date of separation and used business funds to purchase a personal vehicle. The court, however, is "in the best position to weigh witness credibility"[33] and found that Ogunniyi was "far more credible" than Jibade. Its factual finding of the business's value is not clearly erroneous.[34] We therefore affirm the court's overall treatment of the marital business.

### 2. Marital home

Jibade argues that he should be credited for the $17,000 down payment from his separate funds for the marital home. "[C]ourts making property divisions should consider each spouse's relative contributions to the marriage."[35] Yet courts retain discretion to account for those contributions.[36] We have held that it is not an abuse of discretion to decline to give a spouse credit for his down payment for the marital home.[37] The court here noted that "[t]he down payment itself is reflected in the total equity amount in the home"; it did not abuse its discretion by declining to reimburse Jibade on top of that.

### C. Jibade Has Not Demonstrated Judicial Bias.

Alaska Statute 22.20.020(a)(9) prohibits a judge from presiding over a matter when the judge "feels that, for any reason, a fair and impartial decision cannot be given." The Alaska Code of Judicial Conduct further requires judges to recuse themselves when "the judge's impartiality might reasonably be questioned, including

---

[33] *Sean B. v. State, Dep't of Health & Soc. Servs.*, 251 P.3d 330, 335 (Alaska 2011).

[34] *See Stevens v. Stevens*, 265 P.3d 279, 284 (Alaska 2011) ("The valuation of available property is a factual determination that should be reversed only if clearly erroneous.").

[35] *Bussell v. Bussell*, 623 P.2d 1221, 1223 (Alaska 1981).

[36] *See* AS 25.24.160(a)(4).

[37] *Choitner v. Choitner*, 829 P.2d 829, 835 (Alaska 1992).

[when] . . . the judge has a personal bias or prejudice concerning a party or a party's lawyer."**38** "To succeed on a motion to disqualify a judge for bias, the movant must show that the judge's actions 'were the result of personal bias developed from a nonjudicial source.' "**39**

Jibade argues that the assigned judge should have been disqualified because his wife worked for a law firm that was suing Jibade's attorney. That representation, he says, "creates an appearance of bias and conflict of interest." There is no evidence in the record supporting his contention, and "the burden of proof is on the party alleging bias."**40** Jibade's attorney claimed in his motion for disqualification that the judge's wife represented the attorney's former employer and had recently threatened litigation against her in that capacity. But Jibade's attorney did not make these statements in a sworn affidavit or present other evidence supporting them, and the judge denied any knowledge of such representation, threat, or litigation. There is no appearance of bias that would have required the judge's disqualification.**41**

Jibade also argues that the court's unequal division of property and its alleged exclusion of his reimbursement records shows that it was biased against him. But "bias cannot 'be inferred merely from adverse rulings.' "**42** The court's decisions were based on evidence, and nothing in the judge's tone or demeanor "objectively permit[s] a conclusion that the court was biased, or appeared to be biased."**43**

---

**38**     Alaska Code Jud. Conduct 3(E)(1)(a).

**39**     *Hanson v. Hanson*, 36 P.3d 1181, 1184 (Alaska 2001).

**40**     *Braun v. Borough*, 193 P.3d 719, 734 (Alaska 2008), *abrogated on other grounds by Matter of 2021 Redistricting Cases*, 528 P.3d 40, 58 n.60 (Alaska 2023).

**41**     *See* AS 22.20.020; Alaska Code Jud. Conduct 3(E).

**42**     *Downs v. Downs*, 440 P.3d 294, 300 (Alaska 2019) (quoting *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015)).

**43**     *Kinnan v. Sitka Counseling*, 349 P.3d 153, 161 (Alaska 2015) (alteration in original).

## V. CONCLUSION

We AFFIRM the superior court.